# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| | § | |
| | § | |
| IN RE: | § | CHAPTER 11 |
| | § | |
| **BLUE DUCK ENERGY, LTD.** | § | CASE NO. 24-20224-BWO11 |
| | § | |
| *Debtor.* | § | |
| | § | |
| | § | |
| | § | |

## COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN

TO ALL CREDITORS AND INTEREST HOLDERS
OF BLUE DUCK ENERGY, LTD.:

The purpose of this *Combined Disclosure Statement and Chapter 11 Plan* is to provide adequate information to enable all creditors and equity interest holders to arrive at a reasonably informed decision in exercising their respective rights with respect to the Plan.

The Debtor proposes a Plan that it believes will result in a higher recovery to creditors than a chapter 7 liquidation.

**The Debtor supports confirmation of the Plan and recommends that all creditors who receive a ballot vote to accept the Plan.**

Thomas D. Berghman
Texas Bar No. 24082683
Julian P. Vasek
Texas Bar No. 24070790
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 4000
Dallas, Texas 75201-6605
Telephone:   (214) 855-7500
Email:        tberghman@munsch.com
             jvasek@munsch.com

***Counsel to the Chapter 11 Trustee***

Dated:  February 2, 2026, Dallas, Texas.

4921-4670-7839v.3

## INTRODUCTION

The Debtor proposes this Combined Disclosure Statement and Chapter 11 Plan (the "***Disclosure Statement***" and/or "***Plan***," as applicable) pursuant to the provisions of sections 1121, 1125 and 1126 of the Bankruptcy Code.

Under the Plan, Allowed Claims against the Debtor are unaffected, and the Plan preserves all legal, equitable, and contractual rights related to Allowed Claims. Disputed Claims and Interests will be resolved as quickly as reasonably practicable. Until such Claims and Interests are Allowed, the holders of such Claims and Interests are prohibited from exercising legal, equitable, and contractual rights related to Disputed Claims and Interests.

In particular the Debtor's equity Interests holders, whose identities and relative Interests will be determined in the pending Adversary Proceeding before the Bankruptcy Court, will retain their equity Interests in the Debtor under the Plan. Until the conclusion of the Adversary Proceeding, however, the Trustee will remain in exclusive control of the Debtor.

A further description of the Debtor and the events leading up to and occurring during the Bankruptcy Case, and the terms of the Plan can be found below.

4921-4670-7839v.3

## TABLE OF CONTENTS

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION,
COMPUTATION OF TIME AND OTHER REFERENCES ...................................................1

    A.     Defined Terms .........................................................................................1
    B.     Rules of Interpretation ...........................................................................7
    C.     Computation of Time .............................................................................7
    D.     Reference to Monetary Figures...............................................................7
    E.     Controlling Document ............................................................................8

ARTICLE II. VOTING ON THE PLAN.............................................................................8

ARTICLE III. THE PLAN – TREATMENT OF CLAIMS AND INTERESTS ...........................9

    A.     Administrative Claims ............................................................................9
    B.     Professional Fee Claims.........................................................................9
    C.     Priority Tax Claims (Federal and State) .................................................9
    D.     Classification of Claims and Interests.....................................................9
    E.     Treatment and Voting of Classes of Claims and Interests .....................10
    F.     Agreements Concerning the Treatment of Claims.................................11
    G.     Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.....11

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN .......................................11

    A.     General Settlement of Claims and Interests...........................................11
    B.     Funding Through Continued Operations ...............................................11
    C.     Debtor's Post-Confirmation Management .............................................12
    D.     Corporate Action..................................................................................12
    E.     Effectuating Documents; Further Transactions .....................................12
    F.     Exemptions from Certain Taxes and Fees .............................................12
    G.     Vesting of Assets in the Reorganized Debtor ........................................13

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES ..................................................................................................13

    A.     Assumption and Rejection of Executory Contracts and Unexpired Leases ..........13
    B.     Insurance Policies ................................................................................14
    C.     Claims Based on Rejection of Executory Contracts or Unexpired Leases............14
    D.     Modifications, Amendments, Supplements, Restatements, or Other Agreements 14
    E.     Reservation of Rights...........................................................................15

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS................................................15

    A.     Delivery of Distributions and Undeliverable or Unclaimed Distributions ............15
    B.     Manner of Payment..............................................................................16
    C.     Vesting of Distributions to Creditors....................................................16
    D.     Compliance Matters.............................................................................16
    E.     Allocation Between Principal and Accrued Interest...............................16
    F.     Setoffs and Recoupment ......................................................................16

ARTICLE VII. PROCEDURES FOR RESOLVING CERTAIN CONTINGENT,
UNLIQUIDATED, AND DISPUTED CLAIMS AND INTERESTS .........................................17

4921-4670-7839v.3

| | | |
|---|---|---|
| A. | Allowance of Disputed Claims and Interests | 17 |
| B. | Claims Administration Responsibilities | 17 |
| C. | Estimation of Claims and Interests | 17 |
| D. | Adjustment to Claims Without Objection | 18 |
| E. | No Distributions Pending Allowance | 18 |
| F. | Disallowance of Late-Filed Claims | 18 |
| G. | Claim Amendment Deadline | 18 |
| H. | Distributions After Allowance | 18 |

**ARTICLE VIII. SETTLEMENT, RELEASES, INJUNCTIONS, AND RELATED PROVISIONS** ... 19

| | | |
|---|---|---|
| A. | Discharge | 19 |
| B. | Releases of Liens | 19 |
| C. | Exculpation | 19 |
| D. | Permanent Injunction | 20 |
| E. | Temporary Injunction | 21 |
| F. | Preservation of All Causes of Action Not Expressly Settled or Released | 21 |
| G. | Integral Part of Plan | 22 |

**ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE** ... 22

| | | |
|---|---|---|
| A. | Conditions Precedent to the Confirmation of the Plan | 22 |
| B. | Conditions Precedent to the Effective Date | 22 |
| C. | Waiver of Conditions Precedent | 23 |
| D. | Effect of Non-Occurrence of Conditions to Confirmation or Consummation | 23 |
| E. | Substantial Consummation | 23 |

**ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** ... 24

| | | |
|---|---|---|
| A. | Modification and Amendments | 24 |
| B. | Revocation or Withdrawal of Plan | 24 |

**ARTICLE XI. RETENTION OF JURISDICTION** ... 24

**ARTICLE XII. MISCELLANEOUS PROVISIONS** ... 26

| | | |
|---|---|---|
| A. | Additional Documents | 26 |
| B. | Statutory Fees | 26 |
| C. | Reservation of Rights | 27 |
| D. | Successors and Assigns | 27 |
| E. | Service of Documents | 27 |
| F. | Entire Agreement | 28 |
| G. | Non-Severability | 28 |
| H. | Good Faith | 28 |
| I. | No Attorney's Fees | 29 |
| J. | Governing Law | 29 |
| K. | Waiver or Estoppel | 29 |
| L. | Closing of Chapter 11 Case | 29 |

4921-4670-7839v.3

ARTICLE XIII. BACKGROUND AND EVENTS LEADING UP TO CHAPTER 11 ..............29

    A.    Company Background and Operations ....................................................29
    B.    The Bankruptcy Case ..............................................................................30

ARTICLE XIV. THE DEBTOR'S BANKRUPTCY CASE.................................................30

ARTICLE XV. CONFIRMATION OF THE PLAN ..........................................................31

    A.    Overview of Chapter 11 ..........................................................................31
    B.    Confirmation Hearing .............................................................................31
    C.    Modification of the Plan .........................................................................32
    D.    Requirements for Confirmation of the Plan ...........................................32
    E.    Cramdown ...............................................................................................34
    F.    Effective Date of the Plan ......................................................................35

ARTICLE XVI. RISK FACTORS FOR THE PLAN AND DISCLAIMERS ............................35

    A.    General....................................................................................................35
    B.    Parties in Interest May Object to the Classification of Claims and Interests........35
    C.    Failure to Satisfy Vote Requirement.......................................................36
    D.    The Trustee May Not Be Able to Secure Confirmation of the Plan or
          Confirmation May Be Delayed ...............................................................36
    E.    Nonconsensual confirmation — "Cramdown" .....................................36
    F.    The Trustee May Object to the Amount or Classification of a Claim ..................37
    G.    Risk of Nonoccurrence of the Effective Date .........................................37
    H.    Risk Affecting Potential Recoveries of Holders of Claims in Voting Classes ......37
    I.    Risks Associated with Forward Looking Statements .............................37
    J.    Disclosure Statement Disclaimer............................................................38

ARTICLE XVII. ALTERNATIVES TO CONFIRMATION OF THE PLAN ............................40

    A.    Alternative Plans of Reorganization or Liquidation ..............................40
    B.    Liquidation under Chapter 7 ..................................................................40
    C.    Dismissal of the Bankruptcy Cases........................................................41

ARTICLE XVIII. TAX CONSEQUENCES OF THE PLAN .......................................................41

ARTICLE XIX. CONCLUSION, RECOMMENDATION,  AND REQUEST FOR
CONFIRMATION ...................................................................................................41

4921-4670-7839v.3

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME AND OTHER REFERENCES

A.    *Defined Terms*

Terms and phrases that are used and not defined in this Plan, but that are defined in Chapter 11 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), or the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "<u>Local Rules</u>"), will have the meaning ascribed to such term in the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules, as applicable.  Unless otherwise provided in this Plan, the following capitalized terms have the respective meanings set forth below, and such meanings shall be equally applicable to the singular and plural forms of the terms defined, unless the context requires otherwise.

1.    "***Administrative Claim***" means a Claim for any cost or expense of administration of the Bankruptcy Case under section 503(b) of the Bankruptcy Code, including, without limitation, any fees or charges assessed against the Estate pursuant to 28 U.S.C. § 1930, and further including a Professional Claim.  For the avoidance of doubt, Administrative Claims do not include Secured Tax Claims.

2.    "***Adversary Proceeding***" means Adv. No. 24-02006, styled *JetTexas Oil, LLC et al. v. Stewart Hoge, et al.*, currently pending in the Bankruptcy Court, having been removed from the 192nd Judicial District Court of Dallas County, Texas, Cause No. DC-23-06044.

3.    "***Allowed***"  means, all or a portion of any Claim or Interest that is not Disputed and—

(a)    that has been listed by the Debtor in its Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not "disputed" or "contingent," and with respect to which no contrary proof of Claim or proof of Interest has been timely filed as to which no objection or request for estimation has been filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court;

(b)    that is evidenced by a proof of Claim or proof of Interest filed by the applicable Claims Bar Date as to which no objection or request for estimation has been filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court;

(c)    as to which any objection has been settled, waived, withdrawn, or denied by a Final Order; or

(d)    that is otherwise allowed—

(i)    by a Final Order;

1

        (ii)      by an agreement between the holder of such Claim or Interest and the Debtor prior to the Effective Date; or

        (iii)     pursuant to the terms of this Plan.

For purposes of computing distributions under this Plan, a Claim that has been deemed "Allowed" shall not include interest, costs, fees, or charges on such Claim from and after the Petition Date, except as provided in section 506(b) of the Bankruptcy Code.

4.     "***Allowed Administrative Claim***" means:

     (a)     an Administrative Claim that has been Allowed (but only to the extent Allowed), if approval from the Bankruptcy Court is required in order to Allow the same; or

     (b)     an Administrative Claim which:

        (i)      is incurred by the Debtor after the Petition Date in the ordinary course of business operations or pursuant to an order entered by the Bankruptcy Court granting automatic Administrative Claim status;

        (ii)     is not disputed by the Debtor; and

        (iii)    does not require approval from the Bankruptcy Court to become Allowed.

5.     "***Bankruptcy Case***" means the above-captioned chapter 11 case pending for the Debtor in the Bankruptcy Court and assigned Case No. 24-33155-mvl11.

6.     "***Bankruptcy Code***" means 11 U.S.C. §§ 101, *et. seq.*, in effect as of the Petition Date and as may have been or may be amended or supplemented since, to the extent that any such amendment or supplement is automatically applicable to the Bankruptcy Case by operation of law and not by operation of any election or choice.

7.     "***Bankruptcy Court***" means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division or, if such court ceases to exercise jurisdiction, the court or adjunct thereof that exercises jurisdiction over the Bankruptcy Case.

8.     "***Bankruptcy Rules***" means the Federal Rules of Bankruptcy Procedure, together with the local bankruptcy rules for the Bankruptcy Court as now in effect or as the same may from time to time hereafter be amended.

9.     "***Business Day***" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

10.    "***Cash***" means the legal tender of the United States of America or the equivalent thereof.

11.    "**_Causes of Action_**" means any action, Claim, cause of action, controversy, demand, right, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, or franchise of any kind or character whatsoever, whether known, unknown, contingent, non-contingent, matured, unmatured, suspected, unsuspected, liquidated, unliquidated, Disputed, undisputed, Secured, unsecured, or assertable directly or derivatively, and whether arising before, on, or after the Petition Date, in contract, tort, law, equity, or pursuant to any other theory of law. For avoidance of doubt, Causes of Action include (a) any right of setoff, counterclaim, or recoupment and any Claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; and (c) any Claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code.

12.    "**_Claim_**" means has the meaning set forth in section 101(5) of the Bankruptcy Code, whether or not asserted or Allowed.

13.    "**_Claims Bar Date_**" means January 8, 2025.

14.    "**_Class_**" means a category of holders of Claims or Interests pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code.

15.    "**_Confirmation Date_**" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Case, within the meaning of Bankruptcy Rules 5003 and 9021.

16.    "**_Confirmation Hearing_**" means the hearing to consider confirmation of the Plan and entry of the Confirmation Order.

17.    "**_Confirmation Order_**" means the final, non-appealable order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, as such order may be amended, supplemented, or modified from time to time, which order shall be in form and substance acceptable to the Debtor.

18.    "**_Debtor_**" means Blue Duck Energy, L.P.

19.    "**_Disallowed_**" means, with respect to any Claim or Interest or portion thereof, any Claim against or Interest in the Debtor which:

(i)    has been disallowed, in whole or part, by this Plan or a Final Order;

(ii)    has been withdrawn or disallowed by agreement of the holder thereof and the Debtor in whole or in part;

(iii)    has been withdrawn, in whole or in part, by the holder thereof;

(iv)    if listed in the Schedules as zero, as "unknown," or as disputed, contingent, or unliquidated, and in respect of which a proof of Claim or a proof of Interest, as applicable, has not been timely filed or deemed timely filed pursuant to this Plan, the Bankruptcy Code, or any Final Order or other applicable law;

3

(v) has been reclassified, expunged, subordinated, or estimated to the extent that such reclassification, expungement, subordination, or estimation results in a reduction in the filed amount of any proof of Claim or proof of Interest;

(vi) is evidenced by a proof of Claim or a proof of Interest which has been filed, or which has been deemed to be filed under applicable law or order of the Bankruptcy Court, or which is required to be filed by order of the Bankruptcy Court, but as to which such proof of Claim or proof of Interest was not timely or properly filed;

(vii) is unenforceable to the extent provided in section 502(b) of the Bankruptcy Code; or

(viii) where the holder of a Claim is a Person or Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, unless such Person, Entity or transferee has paid the amount, or turned over any such Property, for which such Person, Entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of the Bankruptcy Code.

In each case a Disallowed Claim or a Disallowed Interest is disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

20. "***Disclosure Statement Order***" means the order of the Bankruptcy Court conditionally approving this Disclosure Statement and the procedures for soliciting and tabulating votes on the Plan, which shall be in form and substance acceptable to the Debtor.

21. "***Disclosure Statement***" has the meaning attributed to it in the Introduction section of this document.

22. "***Disputed***" means, with respect to any Claim or Interest, a Claim or Interest that

(a) is neither Allowed nor Disallowed under this Plan or a Final Order, nor deemed Allowed under sections 502, 503, or 1111 of the Bankruptcy Code;

(b) is subject to determination in or otherwise at issue in the Adversary Proceeding;[1] or

(c) is the subject of a timely objection or request for estimation, and such objection or request for estimation has not been withdrawn or determined by a Final Order.

---

1. For the avoidance of doubt, all Interests in the Debtor are Disputed in the Adversary Proceeding, and the following Claims are Disputed in the Adversary Proceeding: (1) Proof of Claim 5 filed by Stewart Hoge; (2) Proof of Claim 6 filed by James Kondziela; (3) Proof of Claim 7 filed by Blue Duck GP, LLC; (4) Proof of Claim 8 filed by JetTexas Oil, LLC; and (5) Proof of Claim 9 filed by Garrett Johnson.

4

23. "***Effective Date***" means the first business day on which all of the conditions specified in Article IX.B hereof have been satisfied or waived pursuant to Article IX.C hereof.

24. "***Entity***" has the meaning ascribed to it in the Bankruptcy Code.

25. "***Estate***" means the estate created for the Debtor in its Bankruptcy Case pursuant to sections 301 and 541 of the Bankruptcy Code upon the commencement of the Debtor's Bankruptcy Case.

26. "***Exculpated Parties***" means collectively: the Trustee and the Trustee's officers, directors, managers, principals, shareholders, members, management companies, fund advisors, employees, agents, advisory board members, financial advisors, partners, and other professionals.

27. "***Executory Contract***" means a contract or lease to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

28. "***Final Order***" means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court, which has not been reversed, vacated, or stayed, and as to which—

(a) the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing is pending, or

(b) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment has been affirmed by the highest court to which such order was appealed, or certiorari has been denied, or a new trial, reargument, or rehearing has been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired;

provided, however, that no order or judgment will fail to be a "Final Order" solely because of the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 has been or may be filed with respect to such order or judgment.

29. "***General Unsecured Claims***" means unsecured Claims against the Debtor other than Administrative Claims, Priority Tax Claims, and Other Priority Claims.

30. "***Governmental Unit***" has the meaning set forth in section 101(27) of the Bankruptcy Code.

31. "***Impaired***" means, with respect to a Claim or Interest, or Class of Claims or Interests, a Claim or Class that is "Impaired" within the meaning of section 1124 of the Bankruptcy Code.

4921-4670-7839v.3

32.     "*Insurance Policies*" means all insurance policies and related agreements issued or providing coverage at any time to the Debtor or any of its predecessors and all agreements, documents, or instruments relating thereto.

33.     "*Interests*" means the general and limited partnership interests in the Debtor.

34.     "*MVR*" means Blue Duck Energy MVR, LLC.

35.     "*Notice*" means all notices, requests, and demands relating to the Plan.

36.     "*Other Priority Claim*" means any Claim against any of the Debtor entitled to priority in payment as specified in section 507(a)(4), (5), (6), (7) or (9) of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim.

37.     "*Partnership Agreement*" means that certain *Agreement of Limited Partnership of Blue Duck Energy, Ltd.* effect as of May 25, 2021, as amended from time to time if applicable.

38.     "*Person*" means a person as defined in section 101(41) of the Bankruptcy Code.

39.     "*Petition Date*" means  August 14, 2024.

40.     "*Plan*" has the meaning attributed to it in the Introduction section of this document.

41.     "*Priority Tax Claim*" means any Secured or unsecured Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

42.     "*Representatives*" means, with respect to a Person, such Person's current and former (i) officers, (ii) directors, (iii) managers, (iv) principals, (v) members, (vi) employees, (vii) agents, (viii) advisory board members, (ix) financial advisors, (x) partners, (xi) attorneys, (xii) accountants, (xiii) investment bankers, (xiv) consultants, (xv) representatives, and (xvi) other professionals, each in their capacity as such.

43.     "*Reorganized Debtor*" means the Debtor immediately following the Effective Date of the Plan.

44.     "*Retained Causes of Action*" means all Causes of Action owned by the Debtor's Estate that are not released, waived, or transferred pursuant to this Plan or other Final Order, including, but not limited to, those described in the Schedules, those that have been or could be brought in the Adversary Proceeding.

45.     "*Schedules*" means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended from time to time.

46.     "*Secured*ʹ means, when referring to a Claim: (a) secured by a lien on property in which the Estate has an interest, which lien is valid, perfected, and enforceable pursuant to

6

applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code; or (b) otherwise Allowed pursuant to this Plan as a Secured Claim.

  47. "*Secured Claim*" means a Claim that is Secured.

  48. "*Statutory Fees*" means all fees and charges assessed against the Estate under section 1930 of chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1-4001.

  49. "*Substantial Consummation*" or "*Substantially Consummated*" has the meaning attributed to it in section 1101 of the Bankruptcy Code.  For the avoidance of doubt, Substantial Consummation shall not occur until the Adversary Proceeding is resolved by Final Order.

  50. "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

  51. "*Unimpaired*" means, with respect to a Claim, or Class of Claims, not "Impaired" within the meaning of section 1123(a)(4) and 1124 of the Bankruptcy Code.

  52. "*Unsecured Claim*" means any Claim that is not a Secured Claim.

B. *Rules of Interpretation*

  Unless otherwise specified, all section, article, and exhibit references in this Plan are to the respective Section in, or Article of, this Plan, as the same may be amended, waived or modified from time to time.  Words denoting the singular number shall include the plural number and *vice versa*.  In construing this Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

  The purpose of this Plan is to preserve the status quo pending resolution of the Adversary Proceeding and to allow a neutral individual (*i.e.*, the Trustee) to operate the Debtor until the Adversary Proceeding is resolved by Final Order.  The Plan shall be interpreted in a manner consistent with this objective.

C. *Computation of Time*

  Unless otherwise specifically stated in the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed in the Plan. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D. *Reference to Monetary Figures*

  All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided herein.

4921-4670-7839v.3

E.      *Controlling Document*

In the event of an inconsistency (i) between the Confirmation Order, this Plan, or any other instrument or document created or executed pursuant to this Plan, the Confirmation Order shall control; and (ii) between this Plan or any other instrument or document created or executed pursuant to this Plan, this Plan shall control.

The provisions of this Plan and the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each and shall be incorporated by reference into the Confirmation Order; provided that, if there is determined to be any inconsistency between any provisions of this Plan and any provision of the Confirmation Order and such inconsistency cannot be reconciled, the provisions of the Confirmation Order shall govern and any such provisions of the Confirmation Order shall be deemed a modification of this Plan, solely to the extent of such inconsistency.

## ARTICLE II.
## VOTING ON THE PLAN

The Debtor is providing copies of this Plan and Disclosure Statement and ballots to all known holders of Claims and Interests who are entitled to vote on the Plan. If you received a ballot, you are entitled to vote.

The procedures for voting were approved by the Bankruptcy Court by Order entered on [_____], 2026 [Docket No. ____].  Pursuant to the provisions of the Bankruptcy Code, only Classes of Claims against and Interests in the Debtor that are Impaired under the terms and provisions of the Plan and are entitled to receive a distribution thereunder are entitled to vote to accept or reject the Plan. Accordingly, Classes of Claims or Interests that are not Impaired under the terms and provision of the Plan are not entitled to vote on the Plan.

| Class | Description | Status | Voting Rights | Estimated Recovery |
|-------|-------------|--------|---------------|--------------------|
| 1 | Secured Claims | Unimpaired | Deemed to Accept | 100% |
| 2 | Priority Unsecured Claims | Unimpaired | Deemed to Accept | 100% |
| 3 | General Unsecured Claims | Unimpaired | Deemed to Accept | 100% |
| 4 | Interests | Unimpaired | Deemed to Accept | 100% |

Under the Plan, holders of Allowed Claims and Interests in Classes 1, 2, 3, and 4 are Unimpaired, are deemed to accept Plan, and are not entitled to vote.

8

## ARTICLE III.
## THE PLAN – TREATMENT OF CLAIMS AND INTERESTS

A.     *Administrative Claims*

Except with respect Administrative Claims that are professional fee Claims or Priority Tax Claims, and except to the extent that a holder of an Allowed Administrative Claim (including a Claim arising under section 503(b)(9) of the Bankruptcy Code that has not been paid pursuant to a motion filed with the Bankruptcy Court) and the Debtor agree to a less favorable treatment, each holder of an Allowed Administrative Claim shall be paid in full in cash on the later of the Effective Date, the date such Administrative Claim is Allowed, and the date such Allowed Administrative Claim becomes due and payable; provided, however, that each holder of an Administrative Claim must file an original, written administrative expense claim request (the "Administrative Claim Request") so that it is actually received on or before forty-five (45) days after the Effective Date (the "Administrative Claims Bar Date").  Each Administrative Claim Request must be filed as a separate motion/application, be denominated in lawful United States currency, set forth with specificity the legal and factual basis for the Administrative Claim, and have attached to it supporting documentation upon which the claimant will rely to support the Administrative Claim Request.  Any holder of an Administrative Claim who is required to file an Administrative Claim Request but fails to do so on or before the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such claim against the Debtor, the Debtor's estate, and its property, and the Debtor and its estate will be discharged from all indebtedness or liability with respect to any such claim that is not timely filed.

B.     *Professional Fee Claims*

All final requests for payment of professional fee Claims and requests for reimbursement of expenses must be filed no later than forty-five (45) days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court, the Allowed amounts of such professional Claims and expenses shall be determined by the Bankruptcy Court and paid by the Reorganized Debtor.

C.     *Priority Tax Claims (Federal and State)*

Except to the extent that a holder of an Allowed Priority Tax Claim and the Debtor agree to a less favorable treatment, and except as otherwise set forth herein, each Allowed Priority Tax Claim will be paid in full in cash on or as soon as reasonably practicable after the Effective Date; provided that Allowed Priority Tax Claims that arise post-petition in the ordinary course of Debtor's or the Reorganized Debtor's business shall be paid by the Debtor or Reorganized Debtor in the ordinary course of business.

D.     *Classification of Claims and Interests*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtor. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest is also classified in a

9

particular Class for the purpose of receiving distributions, if any, pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

E.    *Treatment and Voting of Classes of Claims and Interests*

1.    <u>Class 1: Secured Claims</u>

a.    *Identification of Class.*  Class 1 consists of all Allowed Secured Claims against the Debtor.

b.    *Treatment.*  The Plan leaves unaltered the legal, equitable, and contractual rights to which each Allowed Secured Claim entitles the holder of such Allowed Secured Claim.

c.    *Voting.*  Class 1 is Unimpaired and deemed to accept the Plan.

2.    <u>Class 2: Priority Unsecured Claims</u>

a.    *Identification of Class.*  Class 2 consists of all Allowed Priority Unsecured Claims against the Debtor.

b.    *Treatment.*  The Plan leaves unaltered the legal, equitable, and contractual rights to which each Allowed Priority Unsecured Claim entitles the holder of such Allowed Priority Unsecured Claim.

c.    *Voting.*  Class 2 is Unimpaired and deemed to accept the Plan.

3.    <u>Class 3: General Unsecured Claims</u>

a.    *Identification of Class.*  Class 3 consists of all Allowed General Unsecured Claims against the Debtor.

b.    *Treatment.*  The Plan leaves unaltered the legal, equitable, and contractual rights to which each Allowed General Unsecured Claim entitles the holder of such Allowed General Unsecured Claim.

c.    *Voting.*  Class 3 is Unimpaired and deemed to accept the Plan.

4.    <u>Class 4:  Interests in the Debtor</u>

a.    *Identification of Class.*  Class 4 consists of all Allowed Interests in the Debtor.

b.    *Treatment.*  Notwithstanding section 1141(d)(1)(B) of the Bankruptcy Code, the Plan leaves unaltered the legal, equitable, and contractual rights to which each Allowed Interest entitles the holder of such Allowed Interest, as determined in the Adversary Proceeding; provided, however, for the avoidance of doubt that, until the Adversary Proceeding is resolved by Final Order, Persons holding or claiming to hold

10

Interests, which are currently Disputed and not Allowed, are prohibited from exercising the legal, equitable, and contractual rights to which an Allowed Interest otherwise would entitle the holder of such Allowed Interest.

        c.    *Voting.*  Class 4 is Unimpaired and deemed to accept the Plan.

F.    *Agreements Concerning the Treatment of Claims*

Notwithstanding the treatments provided for the Classes of Claims and Interests set forth immediately above, the Debtor and any creditor or Interest holder are free to agree to different terms, and such agreements shall not be subject to Bankruptcy Court approval if entered into after the Effective Date.

G.    *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code*

In the event the Court determines that any Class of Claim or Interests is Impaired, then section 1129(a)(8) of the Bankruptcy Code will not be satisfied, and the Debtor will seek confirmation pursuant to section 1129(b) of the Bankruptcy Code with respect to such Class(es) of Claims or Interests.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *General Settlement of Claims and Interests*

Unless otherwise set forth in the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan.

The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtor and its Estate.

B.    *Funding Through Continued Operations*

Payments to creditors contemplated under this Plan shall be made from revenue generated from the Reorganized Debtor's continued business operations, including the operations of its subsidiary, MVR.

11

C.    *Debtor's Post-Confirmation Management*

Following the Effective Date, notwithstanding any provision of the Bankruptcy Code to the contrary, the Trustee will continue in his role as chapter 11 trustee, with all rights, powers, privileges, and immunities appurtenant thereto, until the earlier of (1) the Trustee's resignation or incapacity; and (2) Substantial Consummation. In the event the Trustee resigns or becomes incapacitated, the Bankruptcy Court shall appoint a successor trustee on its own initiative or on motion of any party in interest (including the Trustee's counsel). Upon Substantial Consummation, the Trustee shall seek relief from the Court to close the case, enter a final decree, and discharge him from his duties, and management of the Reorganized Debtor shall be determined in accordance with the Partnership Agreement and the outcome of the Adversary Proceeding. Notwithstanding anything in the Plan to the contrary, Jason Rae, in his capacity as chapter 11 trustee, shall remain in exclusive control of the Debtor until the Court orders otherwise.

D.    *Corporate Action*

On the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved, and, to the extent taken by the Trustee or the Debtor prior to the Effective Date, ratified, confirmed, and approved without any requirement for further action by holders of Claims or Interests, the Trustee, the Debtor, the Reorganized Debtor, or any other Entity in all respects. All matters provided for in the Plan involving the corporate structure of the Debtor or the Reorganized Debtor, as applicable, and any corporate action required by the Debtor or the Reorganized Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtor or the Reorganized Debtor, as applicable. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtor or the Reorganized Debtor, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Debtor or Reorganized Debtor. Such authorizations and approvals shall be effective notwithstanding any requirements applicable under non-bankruptcy law.

E.    *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Reorganized Debtor is authorized to issue, execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, in the name of and on behalf of the Debtor or Reorganized Debtor, without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

F.    *Exemptions from Certain Taxes and Fees*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, no transfers of property under the Plan shall be subject in any way to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or

12

governmental assessment, including but not limited to (1) the issuance, distribution, transfer, or exchange of any debt, equity security, or other Interest; or (2) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan. All state or local government officials and agents shall forego collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

G.     *Vesting of Assets in the Reorganized Debtor*

Notwithstanding section 1141(b) of the Bankruptcy Code, confirmation of the Plan shall not immediately vest all property of the Estate in the Reorganized Debtor.  Instead, all property of the Estate shall vest in the Reorganized Debtor upon Substantial Consummation.

On and after the Effective Date but before Substantial Consummation, except as otherwise provided in the Plan, the Trustee may operate the Reorganized Debtor's business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

Following Substantial Consummation, except as otherwise provided in the Plan, the Reorganized Debtor (through management as determined by Final Order in the Adversary Proceeding) may operate its business and may use, acquire, or dispose of any remaining property and compromise or settle any remaining Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.     *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date of the Plan, all Executory Contracts and Unexpired Leases will be deemed assumed except for Executory Contracts and Unexpired Leases rejected by prior order of the Bankruptcy Court.  Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtor existing as of the Confirmation Date with respect to any Executory Contracts or Unexpired Leases.

Assumption of any Executory Contract or Unexpired Lease, pursuant to the Plan or otherwise, shall result in the full release and satisfaction of any defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership

13

interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.

**Proof of any Claim resulting from or related the rejection of an Executory Contract or Unexpired Lease must be filed no later than the earlier of (i) any deadline set forth in the order authorizing the rejection of such Executory Contract or Unexpired Lease; or (ii) thirty (30) days after the Effective Date. Any such Claim not timely filed is hereby Disallowed for all purposes in this Chapter 11 Case, discharged, forever barred, and expunged without further notice to or action, order, or approval of the Bankruptcy Court.**

**Any proof of claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed Disallowed for all purposes in this Chapter 11 Case, discharged, forever barred, and expunged without further notice to or action, order, or approval of the Bankruptcy Court.**

B.    *Insurance Policies*

Notwithstanding anything to the contrary herein, all Insurance Policies, and any agreements, documents, or instruments relating thereto issued to or entered into by the Debtor prior to confirmation shall not be considered Executory Contracts and shall neither be assumed nor rejected by the Debtor; *provided*, *however*, that to the extent any Insurance Policy is determined by Final Order to be an Executory Contract, then, notwithstanding anything contained in the Plan to the contrary, the Plan will constitute a motion to assume such Insurance Policy and vest ownership of the same to the Reorganized Debtor. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order will constitute approval of such assumption and assignment pursuant to section 365 of the Bankruptcy Code. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtor existing as of the Confirmation Date with respect to any Insurance Policy, and prior payments for premiums or other charges made prior to the Petition Date under or with respect to any Insurance Policy shall be indefeasible.

C.    *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

All Claims arising from the rejection of Executory Contracts or Unexpired Leases under this Plan must be filed with the Bankruptcy Court and served upon the Reorganized Debtor and its counsel within thirty (30) days after the occurrence of the Effective Date; *provided*, *however*, the deadline for filing any rejection damage Claims relating to any Executory Contracts or Unexpired Leases rejected pursuant to a separate order of the Bankruptcy Court shall be the applicable deadline under such order or the Claims Bar Date, as applicable. Any Claim arising from the rejection of an Executory Contract or Unexpired Lease that becomes an Allowed Claim shall be classified and treated as a General Unsecured Claim against the Debtor.

D.    *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits,

14

rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements have been previously rejected or repudiated or is rejected or repudiated under the Plan.

Except as otherwise provided in a Final Order, modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed during the Bankruptcy Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

E.      *Reservation of Rights*

Neither the exclusion nor inclusion of any contract or lease on Schedule G of the Debtor's Schedules, nor anything contained in the Plan, shall constitute an admission by the Debtor or any other party that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtor or the Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Reorganized Debtor shall have thirty (30) calendar days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease to assume or reject it, including by rejecting such contract or lease effective as of the Confirmation Date.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.      Delivery of distribution in General

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be made to holders of record as of the Effective Date by the Trustee or Reorganized Debtor, as applicable: (a) to the party designated to receive payment on any proof of Claim or proof of Interest; or (b) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtor after the Effective Date. The Reorganized Debtor shall not incur any liability whatsoever on account of any distributions under the Plan except for fraud, gross negligence, or willful misconduct, and the Trustee shall not incur any personal liability whatsoever on account of any distributions under the Plan.

2.      Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Claim holder is returned as undeliverable, no further distribution to such holder shall be made unless and until the Trustee or Reorganized Debtor, as applicable, has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; provided, however, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one hundred and eighty (180) days from the date the distribution was returned. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtor (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws

to the contrary), and the Claim of any holder to such property or interest in property shall be cancelled and forever barred and discharged.

B.      *Manner of Payment*

At the option of the Trustee or the Reorganized Debtor, as applicable, any Cash payment to be made under the Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

C.      *Vesting of Distributions to Creditors*

Except as otherwise provided in the Plan, or in any agreement, instrument, or other document incorporated in the Plan, all property distributed to creditors under the Plan shall vest in each respective creditor free and clear of all liens, Claims, charges, or other encumbrances.

D.      *Compliance Matters*

In connection with the Plan and all distributions hereunder, to the extent applicable, the Trustee and the Reorganized Debtor, as applicable, are authorized to take any and all actions that may be necessary or appropriate to comply with all tax withholding and reporting requirements imposed by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Trustee and the Reorganized Debtor, as applicable, shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of a distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms it believes are reasonable and appropriate. The Trustee and the Reorganized Debtor, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances. All Persons holding Claims shall be required to provide any information necessary to effect reporting and the withholding of such taxes. Notwithstanding any other provision of the Plan to the contrary, each holder of an Allowed Claim shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution.

E.      *Allocation Between Principal and Accrued Interest*

Except as otherwise provided in the Plan, the aggregate consideration paid to holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any, on such Allowed Claim accrued through the Petition Date.

F.      *Setoffs and Recoupment*

Unless otherwise provided in the Plan or the Confirmation Order, the Trustee and the Reorganized Debtor, as applicable, pursuant to the Bankruptcy Code, applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim, may set off or recoup against any Allowed

16

Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim, any Claims, rights, and Causes of Action of any nature that the Estate and the Reorganized Debtor, as applicable, may hold against the holder of such Allowed Claim. In no event shall any Claim holder be entitled to set off or recoup any such Claim against any Claim, right, or Cause of Action of the Estate or the Reorganized Debtor, unless such holder has filed a motion with the Bankruptcy Court requesting the authority to implement such setoff or recoupment on or before the Confirmation Date, and notwithstanding any indication in any proof of Claim or otherwise that such holder asserts, has, or intends to preserve any right of setoff or recoupment pursuant to section 553 of the Bankruptcy Code or otherwise.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CERTAIN CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS AND INTERESTS

A.      *Allowance of Disputed Claims and Interests*

Except as expressly provided herein or in any order entered in the Bankruptcy Case on or prior to the Effective Date (including the Confirmation Order), no Claim shall be deemed Allowed unless and until such Claim is deemed Allowed under the Bankruptcy Code or this Plan or the Bankruptcy Court enters a Final Order in the Bankruptcy Case allowing such Claim. Except as expressly provided in any order entered in the Bankruptcy Case on or prior to the Effective Date (including the Confirmation Order), the Trustee and the Reorganized Debtor, as applicable, will have and retain any and all rights and defenses the Estate or Debtor had with respect to any Claim.

B.      *Claims Administration Responsibilities*

After the Effective Date, the Trustee shall have the exclusive authority to file, settle, compromise, withdraw, or litigate to judgment any objections to Claims.  From and after the Effective Date, the Trustee may settle or compromise any Disputed Claim, and may administer and adjust the claims register to reflect such settlements or compromises, without notice to, action, order, or approval of the Bankruptcy Court. The Trustee may also resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law, as necessary; *provided*, *however*, that for the avoidance of doubt, the underlying Claim shall remain under the jurisdiction of the Bankruptcy Court and shall not be Disallowed other than by order of the Bankruptcy Court.  Upon Substantial Consummation, the Reorganized Debtor may continue to prosecute any objections to Claims or Interests initiated by the Trustee but may not otherwise object to Claims or Interests.

C.      *Estimation of Claims and Interests*

The Trustee may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether anyone has previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time, including during the pendency of any appeal related to any such objection. In the event the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Trustee may elect to pursue any supplemental

4921-4670-7839v.3

proceedings to object to any ultimate payment on such Claim. All of the aforementioned objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another. Claims may be estimated and thereafter resolved by any permitted mechanism. Upon Substantial Consummation, the Reorganized Debtor may continue to prosecute any estimation proceedings initiated by the Trustee but may not otherwise request estimation.

D.      *Adjustment to Claims Without Objection*

Any duplicate Claim or any Claim that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the claims register by the Trustee or the Reorganized Debtor, as applicable, without having to file an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.      *No Distributions Pending Allowance*

Notwithstanding any other provision hereof, if any portion of a Claim or Interest is a Disputed Claim or Interest, then no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes Allowed.

F.      *Disallowance of Late-Filed Claims*

**EXCEPT AS PROVIDED HEREIN OR IN AN ORDER OF THE BANKRUPTCY COURT, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE CLAIMS BAR DATE SHALL BE AUTOMATICALLY DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL BY, FROM, OR OF THE BANKRUPTCY COURT, THE DEBTOR, OR THE REORGANIZED DEBTOR. HOLDERS OF SUCH CLAIMS SHALL NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS.**

G.      *Claim Amendment Deadline*

**NO AMENDMENTS TO CLAIMS SHALL BE PERMIITED ON OR AFTER THE CONFIRAMTION DATE, AND ANY SUCH AMENDMENTS SHALL BE DEEMED INEFFECTIVE WITHOUT ANY FURTHER NOTICE OR ACTION, ORDER, OR APPROVAL OF THE COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH AMENDED CLAIMS.**

H.      *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of this Plan. As soon as reasonably practicable after the date that a Disputed Claim becomes an Allowed Claim, the Trustee or the Reorganized Debtor, as applicable, shall provide to the holder of such Claim the distribution (if any) to which such holder is entitled under this Plan as of the Effective Date, for the time period prior to allowance, without any postpetition interest to be paid on account of such Claim.

## ARTICLE VIII.
## SETTLEMENT, RELEASES, INJUNCTIONS, AND RELATED PROVISIONS

A.   *Discharge*

On the Effective Date, the confirmation of this Plan discharges the Debtor, Estate, and the Reorganized Debtor from any Disallowed Claim that arose before the date of such confirmation, and any Claim of a kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not—(i) a proof of the Claim is filed or deemed filed under section 501 of this title; (ii) such Claim is allowed under section 502 of this title; or (iii) the holder of such Claim has accepted the Plan.

Notwithstanding section 1141(d)(1)(A) of the Bankruptcy Code, the confirmation of this Plan does not discharge the Debtor, Estate, or the Reorganized Debtor from any Allowed Claim.

B.   *Releases of Liens*

Except as otherwise provided in this Plan or in any contract, instrument, release, or other agreement or document created pursuant to this Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to this Plan, all mortgages, deeds of trust, liens, pledges, or other security interests against any property of the Estate with respect to any Disallowed Claim shall be fully released and cancelled, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, liens, pledges, or other security interests shall revert to the Estate and the Reorganized Debtor.

C.   *Exculpation*

**To the fullest extent permitted by applicable law, effective as of the Effective Date, the Exculpated Parties shall neither have nor incur any liability to any Person or entity for any Claims, causes of action or for any act taken or omitted to be taken on or after the Petition Date and prior to the Effective Date in connection with or arising out of: (a) the administration of the Bankruptcy Case, (b) commencement of the Bankruptcy Case, (c) pursuit of confirmation and consummation of this Plan or any prior plan, (d) the solicitation of votes for, or confirmation of, this Plan, (e) the occurrence of the Effective Date, (f) the administration of this Plan or the property to be distributed under this Plan, (g) the issuance of securities under or in connection with this Plan, (h) the purchase, sale, or rescission of the purchase or sale of any asset or security of the Debtor, or (i) the transactions in furtherance of any of the foregoing; provided, however, that none of the foregoing provisions shall operate to waive or release (x) any Claims or Causes of Action arising out of or related to any act or omission of an Exculpated Party that constitutes intentional fraud, criminal conduct, or willful misconduct, as determined by a Final Order, and (y) the Exculpated Parties' rights and obligations under this Plan and the Confirmation Order, but in all respects such Persons will be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to this Plan. The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of votes on this Plan and, therefore, are not, and will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of**

19

4921-4670-7839v.3

acceptances or rejections of this Plan or distributions made pursuant to this Plan. The **Exculpation** will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties and any other person or entity from liability.

D.    *Permanent Injunction*

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively, or otherwise, of any Disallowed Claims (including related obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities).

**In particular, all entities who hold or may hold Disallowed Claims against or Interests in the Debtor and all entities acting on behalf of such holders shall be permanently ENJOINED from taking any of the following actions against the Estate or the Reorganized Debtor:**

(i)    **exercising or attempting to exercise any purported rights to effectuate a change in the Debtor's management;**

(ii)    **exercising or attempting to exercise control over the Reorganized Debtor, its operations, and/or its assets;**

(iii)    **commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Disallowed Claims or Interests;**

(iv)    **enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Reorganized Debtor on account of or in connection with or with respect to any Disallowed Claims or Interests;**

(v)    **creating, perfecting, or enforcing any encumbrance of any kind against the Reorganized Debtor or its property on account of or in connection with or with respect to any Disallowed Claims or Interests;**

(vi)    **asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Reorganized Debtor or against the property of the Estate or the Reorganized Debtor on account of or in connection with or with respect to any Disallowed Claims or Interests unless such holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date;**

(vii)    **commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Disallowed Claims or Interests.**

E.     *Temporary Injunction*

The Confirmation Order shall temporarily enjoin the commencement or prosecution by any Person, whether directly, derivatively, or otherwise, of any Disputed Claims (including related obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses, or liabilities). The Confirmation Order shall also temporarily enjoin the exercise of any rights or privileges arising from or related to any Disputed Interests.

**In particular, all entities who hold or may hold Disputed Claims against or Interests in the Debtor and all entities acting on behalf of such holders shall be temporarily ENJOINED, until such Disputed Claim or Interest becomes Allowed, from taking any of the following actions against the Estate or the Reorganized Debtor:**

(viii)   **exercising or attempting to exercise any purported rights to effectuate a change in the Debtor's management;**

(ix)    **exercising or attempting to exercise control over the Reorganized Debtor, its operations, and/or its assets;**

(x)     **commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Disputed Claims or Interests;**

(xi)    **enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against the Reorganized Debtor on account of or in connection with or with respect to any Disputed Claims or Interests;**

(xii)   **creating, perfecting, or enforcing any encumbrance of any kind against the Reorganized Debtor or its property on account of or in connection with or with respect to any Disputed Claims or Interests;**

(xiii)  **asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Reorganized Debtor or against the property of the Estate or the Reorganized Debtor on account of or in connection with or with respect to any Disputed Claims or Interests unless such holder has filed a motion requesting the right to perform such setoff on or before the Confirmation Date;**

(xiv)   **commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any Disputed Claims or Interests.**

F.     *Preservation of All Causes of Action Not Expressly Settled or Released*

The Estate and the Reorganized Debtor expressly reserve all Retained Causes of Action not released hereunder for later adjudication by, as applicable, the Trustee or the Reorganized Debtor (including, without limitation, Retained Causes of Action not specifically identified or of which the Debtor and the Trustee may presently be unaware or which may arise or exist by reason

21

of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those the Debtor now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches shall apply to such Retained Causes of Action upon or after the confirmation or consummation of this Plan based on the Disclosure Statement, this Plan, or the Confirmation Order, except in each case where such Causes of Action have been expressly waived, relinquished, released, compromised, or settled in this Plan (including, without limitation, and for the avoidance of doubt, the exculpation contained in Article VIII.C hereof) or any other Final Order (including, without limitation, the Confirmation Order). In addition, the Trustee, the Debtor, and the Reorganized Debtor, as applicable, expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which the Debtor is a plaintiff, defendant, or an interested party, against any Person, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

G.  *Integral Part of Plan*

Each of the provisions set forth in this Plan with respect to the settlement, release, cancellation, exculpation, injunction, indemnification and insurance of, for or with respect to Claims and/or Causes of Action is an integral part of this Plan and essential to its implementation. Accordingly, each Entity that is a beneficiary of such provision shall have the right to independently seek to enforce such provision and such provision may not be amended, modified, or waived after the Effective Date without the prior written consent of such beneficiary.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

A.  *Conditions Precedent to the Confirmation of the Plan*

Unless satisfied or waived pursuant to the provisions of Article IX.C hereof, the following are conditions precedent to confirmation of this Plan:

1.  The Disclosure Statement Order shall have been entered by the Bankruptcy Court in form and substance acceptable to the Trustee and shall not have been vacated, amended, or otherwise modified.

2.  The Confirmation Order shall have been entered by the Bankruptcy Court and be in form and substance acceptable to the Trustee and shall not have been vacated, amended, or otherwise modified.

B.  *Conditions Precedent to the Effective Date*

In addition to the satisfaction of the provisions of Article IX.A hereof, unless satisfied or waived pursuant to the provisions of Article IX.C hereof, the following are conditions precedent to the occurrence of the Effective Date of this Plan:

1.  The Confirmation Order shall have been entered by the Bankruptcy Court and otherwise be in form and substance acceptable to the Trustee and shall not have been vacated, amended, or otherwise modified.

4921-4670-7839v.3

2.      This Plan and all other documents contemplated thereby, including any amendments, modifications, or supplements thereto, shall be in form and substance acceptable to the Trustee.

3.      All definitive documents shall have been executed, delivered, and filed (if applicable) and shall be in full force and effect, and all conditions precedent to effectiveness set forth in such definitive documents shall have been satisfied or waived in accordance with the terms thereof.

4.      The Trustee shall have obtained all authorizations, consents, regulatory approvals, rulings or documents that are necessary to implement and effectuate this Plan and such definitive documents, and no order, injunction, or judgment shall have been issued by any governmental authority or arbitrator to restrain, prohibit, enjoin, or declare illegal the transactions contemplated by this Plan, and no law shall have been promulgated or enacted and be in effect that on a temporary or permanent basis restrains, enjoins, or invalidates the transactions contemplated by this Plan.

5.      All actions, documents, certificates, and agreements necessary to implement this Plan shall (i) have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable laws and (ii) be in full force and effect.

6.      All Statutory Fees due and payable prior to the Effective Date shall have been or are being paid, or funds sufficient to pay such Statutory Fees shall have been set aside for that purpose.

C.      *Waiver of Conditions Precedent*

Subject to section 1127 of the Bankruptcy Code, the conditions to confirmation and consummation of this Plan set forth in this Article IX may be waived by the Trustee with or without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate this Plan.  The failure of the Trustee to exercise any of the foregoing rights will not be deemed a waiver of any other rights, and each right will be deemed an ongoing right that may be asserted at any time.

D.      *Effect of Non-Occurrence of Conditions to Confirmation or Consummation*

If the confirmation of this Plan does not occur, then this Plan will be null and void in all respects and nothing contained in this Plan or the Disclosure Statement will: (1) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtor; (2) prejudice in any manner the rights of the Trustee, the Debtor, any holders of Claims or Interests or any other Entity; (3) constitute an Allowance of any Claim or Interest; or (4) constitute an admission, acknowledgment, offer or undertaking by the Trustee, the Debtor, or other Entity in any respect.

E.      *Substantial Consummation*

It shall be a condition precedent to Substantial Consummation that the Adversary Proceeding be resolved by Final Order.  Upon Substantial Consummation, the Trustee shall file a

23

motion with the Bankruptcy Court to: (1) deem the Plan Substantially Consummated; (2) discharge the Trustee from his duties; and (3) close the Bankruptcy Case.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.     *Modification and Amendments*

Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122 and 1125 of the Bankruptcy Code, the Trustee may propose in writing to alter, amend, or modify the Plan prior to or after confirmation. Holders of Claims and Interests that have accepted the Plan shall be deemed to have accepted the Plan as altered, amended, or modified; provided, however, that any holders of Claims and Interests who were deemed to accept the Plan because such Claims or Interests were Unimpaired shall continue to be deemed to accept the Plan only if, after giving effect to such amendment or modification, such Claims and Interests continue to be Unimpaired.

B.     *Revocation or Withdrawal of Plan*

The Trustee reserves the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans. If the Trustee revokes or withdraws the Plan, or if the Confirmation Date or the Effective Date does not occur, then: (1) the Plan will be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (3) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action, (b) prejudice in any manner the rights of the Trustee, the Debtor, or any other Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Trustee, the Debtor, or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, and in addition to the matters over which the Bankruptcy Court shall have otherwise retained jurisdiction, the Bankruptcy Court will, on and after the Effective Date, retain exclusive jurisdiction over the Bankruptcy Case and all Entities with respect to all matters related to the Bankruptcy Case, the Debtor, and this Plan as legally permissible, including, without limitation, jurisdiction to:

1.     Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority or Secured or Unsecured status of any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of any such Claim or Interest, including equitable subordination or other subordination of any Claim or Interest pursuant to 11 U.S.C. § 510;

2.     Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods ending on or before the Effective Date;

3.      Resolve any matters related to the assumption, assignment, or rejection of any Executory Contract or Unexpired Lease and to adjudicate and, if necessary, liquidate, any Claims arising therefrom;

4.      Resolve any issues related to any matters adjudicated in the Bankruptcy Case;

5.      Hear and determine matters concerning state, local, and federal taxes in accordance with sections 106, 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

6.      Ensure that distributions to holders of Allowed Claims are accomplished pursuant to the provisions of this Plan and adjudicate any and all disputes related thereto;

7.      Decide or resolve any motions, adversary proceedings, contested or litigated matters, and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

8.      Enforce all orders previously entered by the Bankruptcy Court;

9.      Enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all other contracts, instruments, releases, indentures, and other agreements or documents adopted in connection with this Plan or the Disclosure Statement;

10.     Resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan or any Person's or Entity's obligations incurred in connection with this Plan;

11.     Hear and determine all Causes of Action that are pending as of the Effective Date or that may be commenced in the future;

12.     Issue injunctions and enforce them, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with consummation, implementation, or enforcement of this Plan;

13.     Enforce the terms and conditions of this Plan, the Confirmation Order, and any definitive documents and maintain the integrity of this Plan following consummation;

14.     Hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, remedy any defect or omission, or reconcile any inconsistency in the Plan, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

25

15.    Resolve any cases, controversies, suits, or disputes with respect to the releases, exculpation, indemnification and other provisions contained in the Plan and enter such orders or take such other actions as may be necessary or appropriate to implement or enforce all such provisions;

16.    Enter and implement such orders or take such other actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

17.    Resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order or any release or exculpation adopted in connection with this Plan;

18.    Enter an order or orders concluding or closing the Bankruptcy Case; and

19.    Hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.    *Additional Documents*

On or before the Effective Date, the Trustee may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Trustee, and as applicable, and all holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

B.    *Statutory Fees*

All fees due and payable prior to the Effective Date, pursuant to section 1930(a) of the Judicial Code, shall be paid in full on or as soon as reasonably practicable after the Effective Date. On and after the Effective Date, the Reorganized Debtor shall pay any and all Statutory fees when due and payable and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. After the Effective Date, the Debtor or Reorganized Debtor, as applicable, shall remain obligated to file post-confirmation quarterly reports and to pay quarterly fees to the U.S. Trustee for each quarter (including any fraction thereof) until the earliest to occur of the entry of (a) a final decree closing the Debtor's Chapter 11 Case, (b) an order dismissing the Debtor's Chapter 11 Case, or (c) an order converting such Debtor's Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code. Notwithstanding anything to the contrary herein, the U.S. Trustee shall not be required to file a proof of Claim or any other request for payment of quarterly fees.

4921-4670-7839v.3

C.    *Reservation of Rights*

Except as expressly set forth herein, this Plan will have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order. Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Trustee or any other Entity with respect to this Plan will be or deemed to be an admission or waiver of any rights of: (1) the Trustee, the Debtor, or the Reorganized Debtor with respect to the holders of Claims Interests or any other Entity; or (2) any holder of a Claim or an Interest or other Entity prior to the Effective Date.

D.    *Successors and Assigns*

This Plan will be binding upon and inure to the benefit of the Debtor, all present and former holders of Claims and Interests, other parties-in-interest, and their respective heirs, executors, administrators, successors, and assigns. The rights, benefits, and obligations of any Person or Entity named or referred to in this Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or Entity.

E.    *Service of Documents*

Any Notice shall be in writing to be effective and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered, addressed as follows:

To the Trustee:

Jason Rae
Lain, Faulkner & Co., P.C.
400 N. St. Paul, Suite 600
Dallas, TX 75201

-AND-

Jason Rae, Chapter 11 Trustee
c/o Munsch Hardt Kopf & Harr P.C.
Attn: Thomas Berghman, Julian Vasek
500 N. Akard St., Ste. 4000
Dallas, TX 75201
tberghman@munsch.com
jvasek@munsch.com

A Notice is deemed to be given and received (a) if sent by personal delivery or courier, on the date of delivery if it is a Business Day and the delivery was made prior to 4:00 p.m. (local time in place of receipt) and otherwise on the next Business Day, (b) if sent by U.S. mail, Federal Express, UPS, or similar service, when it is actually received, or (c) if sent by electronic mail, when the sender receives an email from the recipient acknowledging receipt; provided that an automatic "read receipt" does not constitute acknowledgment of an email for purposes of this Section. Any party may change its address for service from time to time by providing a Notice in

27

accordance with the foregoing. Any element of a party's address that is not specifically changed in a Notice will be assumed not to be changed.

After the Effective Date, the Trustee and the Reorganized Debtor, as applicable, shall have the authority to send a notice to Entities that continue to receive documents pursuant to Bankruptcy Rule 2002 requiring such Entity to file a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Trustee and the Reorganized Debtor, as applicable, are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

F.    *Entire Agreement*

Except as otherwise provided herein, this Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Plan.

G.    *Non-Severability*

If, prior to Plan confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall not alter or interpret such term or provision to make it valid or enforceable; provided, however, that at the request of the Trustee, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such terms or provisions shall then be applicable as altered or interpreted; provided, further, that any such alteration or interpretation must be acceptable to the Trustee. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Trustee; and (3) non-severable and mutually dependent.

H.    *Good Faith*

Upon entry of the Confirmation Order, each of the Exculpated Parties will be deemed to have solicited votes on this Plan and otherwise acted in good faith and in compliance with section 1125 of the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, each of the Exculpated Parties and each of their respective affiliates, agents, Representatives, members, principals, shareholders, officers, directors, managers employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of any securities offered and sold under this Plan and any previous plan, and, therefore, none of such parties or individuals will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on this Plan or the offer, issuance, sale, or purchase of any Ssecurities offered and sold under this Plan or any previous plan.

4921-4670-7839v.3

I.      *No Attorney's Fees*

Except for the fees of the Trustee's and the Estate's professionals, no attorneys' fees shall be paid by the Estate with respect to any Claim or Interest unless otherwise specified in the Plan or by a Final Order of the Bankruptcy Court.

J.      *Governing Law*

Except to the extent the Bankruptcy Code, the Bankruptcy Rules, or other federal or state laws are applicable, or any prepetition contract provides for the application of the law of a different state, the laws of the State of Texas shall govern the construction, implementation, and enforcement of this Plan and all rights and obligations arising under this Plan and under any note, document, or instrument issued under this Plan, without giving effect to the principles of conflicts of law.

K.      *Waiver or Estoppel*

Each holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured, or not subordinated by virtue of an agreement made with the Trustee, the Debtor, or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

L.      *Closing of Chapter 11 Case*

The Trustee shall file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case upon Substantial Consummation.

## ARTICLE XIII.
## BACKGROUND AND EVENTS LEADING UP TO CHAPTER 11

A.      *Company Background and Operations*

The Debtor is a Texas limited partnership organized in May 2021 for the purpose of acquiring, owning, and operating oil and gas interests.  The Debtor's original Interest holders were the Debtor's general partner, Blue Duck Energy GP, LLC, and its two equally situated limited partners, JetTexas Oil, LLC ("JetTexas") and Indian Territory Holdings, LLC ("Indian Territory"). JetTexas is directly or indirectly owned and controlled by Garrett Johnson ("Johnson"), and Indian Territory is directly or indirectly owned and controlled by Stewart Hoge ("Hoge").

As of the Petition Date, the Debtor's principal assets consisted of (1) a minority working interest in oil and gas field in California known as the THUMS Unit; and (2) 100% of the LLC

membership interests in its wholly owned subsidiary, MVR, which in turn owns operated and non-operated oil and gas working interests in Roberts and Gray Counties, Texas.

B.     *The Bankruptcy Case*

At some point, a dispute arose between Johnson and Hoge which ultimately led to litigation.  On March 7, 2023, Hoge filed a petition in Dallas County District Court under Texas Rule of Civil Procedure 202, seeking pre-suit discovery against Johnson and others.  On May 8, 2023, Johnson and JetTexas filed a lawsuit in Dallas County District Court against Hoge, Indian Territory, and others.  On September 19, 2023, Johnson and JetTexas filed a second lawsuit in Dallas County District Court against Seth Wadley, Wadley Family Investments, LLC, Purple Dog Investments, LLC, and Hoge, which the Court consolidated with the first action.

On the Petition Date (August 14, 2024), after more than a year of highly contentious litigation, the Debtor filed its Bankruptcy Case and removed the litigation to the Bankruptcy Court, thereby initiating the Adversary Proceeding.  All filings from the Dallas County District Court suit were re-filed in the Adversary Proceeding and are therefore available for review.

The Adversary Proceeding is set for trial in May 2026 in the Bankruptcy Court.  The Trustee expects that the trial will last several days.  The Trustee also expects that, given the highly contentious nature of the litigation, at least one of the parties will appeal the decision, whatever it is.  In the context of a Bankruptcy Court trial, an appeal goes to the Federal District Court, where an appeal can easily take one year to complete.  Then, the parties to that appeal can appeal further to the United States Court of Appeals for the Fifth Circuit, where an appeal can easily take another year.  The Trustee expects at least one party will elect to appeal the case to the Fifth Circuit.  After that, the losing party may petition the United States Supreme Court to review the case, but those petitions are rarely granted.  Even so, the process to consider the application could easily take another year.  The Trustee does not necessarily expect one of the parties to take the appeal this far, as there are limited grounds available to request Supreme Court review, but it is not outside the realm of possibility.

The Plan is structured so that it will not be Substantially Consummated until the Adversary Proceeding is resolved by Final Order, which requires the exhaustion of all appeals.  Under these circumstances, therefore, several years may go by before the Plan is Substantially Consummated.  Until then, the Bankruptcy Case will remain open, and the Trustee will remain in control of the Estate.

## ARTICLE XIV.
## THE DEBTOR'S BANKRUPTCY CASE

The Debtor filed its voluntary chapter 11 petition on Petition Date (August 14, 2024), thereby initiating the Bankruptcy Case and creating the Estate.

Two weeks later, on August 28, 2024, Johnson and JetTexas filed a *Motion to Appoint Trustee or Examiner* [Dkt. No. 25].  The Bankruptcy Court conducted a lengthy and hotly contested hearing on this motion over two days on October 10 and 22, 2024.  On November 7, 2024, the Bankruptcy Court entered its *Order Granting Motion to Appoint Trustee or Examiner* [Dkt. No. 85], granting the request to appoint a chapter 11 trustee.  On November 15, 2024, the

United States Trustee filed its *Chapter 11 Notice of Appointment of Trustee and of Amount of Bond* [Dkt. No. 89], identifying Jason A. Rae as the Trustee.

The appointment of the Trustee divested the Debtor's management of any control over the Debtor, and the Trustee has managed the Debtor's business and affairs ever since.

On January 3, 2025, the Bankruptcy Court entered its *Order Granting Application to Employ and Retain Munsch Hardt Kopf & Harr, P.C. as General Counsel to the Chapter 11 Trustee* [Dkt. No. 107] and its *Order Granting Application to Employ Lain Faulkner & Co., P.C. as Financial Advisors to the Chapter 11 Trustee* [Dkt. No. 108].

## ARTICLE XV.
## CONFIRMATION OF THE PLAN

A.    *Overview of Chapter 11*

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under chapter 11, a debtor attempts to reorganize its business for the benefit of itself, its creditors, and other parties in interest. The present Bankruptcy Case commenced with the filing of a voluntary chapter 11 petition by the Debtor on the Petition Date, and with the Debtor seeking a reorganization.

The commencement of a chapter 11 case creates an estate comprising all the legal and equitable interests of the Debtor in property as of the date the petition is filed and, in chapter 11, includes all wages and earnings after the Petition Date. Thus, the Estate exists as the Bankruptcy Code estate of the Debtor and its property (and liabilities). Sections 1101, 1107, and 1108 of the Bankruptcy Code provide that a debtor may continue to operate its business and remain in possession of its property as a "debtor-in-possession" unless the bankruptcy court orders the appointment of a trustee.

The filing of a chapter 11 petition also triggers the automatic stay provisions of the Bankruptcy Code. Section 362 of the Bankruptcy Code provides, *inter alia*, for an automatic stay of all attempts to collect prepetition Claims from the debtor or otherwise interfere with its property or business. Except as otherwise ordered by the Bankruptcy Court, the automatic stay remains in full force and effect until the earliest of: (i) the time the case is closed; (ii) the time the case is dismissed; and (iii) the time a discharge is granted or denied.

B.    *Confirmation Hearing*

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan. Section 1128(b) provides that any party in interest may object to confirmation of the Plan. The Confirmation Hearing has been scheduled for [_____] at [_____ a.m./p.m.] in the United States Bankruptcy Court, Courtroom of the Honorable Brad W. Odell. Any objection to confirmation of the Plan must made in writing, and such written objection must be filed with the Bankruptcy Court by no later than [_____].

UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY FILED AND SERVED, IT WILL NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE DEEMED WAIVED.

C.    *Modification of the Plan*

Section 1127 of the Bankruptcy Code generally permits the Debtor to modify the Plan before or after the confirmation hearing, assuming that certain requirements are satisfied.  The Debtor reserves the right to submit modifications of the Plan, as may be deemed advisable by the Debtor, under the provisions of section 1127 of the Bankruptcy Code.

D.    *Requirements for Confirmation of the Plan*

At the confirmation hearing, the Bankruptcy Court will determine whether the confirmation requirements of section 1129 of the Bankruptcy Code have been satisfied, and in the event that they have been and all other conditions to confirmation set forth in the Plan itself have been met, the Bankruptcy Court will enter an order confirming the Plan.  The requirements of section 1129 generally are as follows:

1.    The Plan complies with the applicable provisions of the Bankruptcy Code.

2.    The Debtor comply with the applicable provisions of the Bankruptcy Code.

3.    The Plan has been proposed in good faith and not by any means forbidden by law.

4.    Any payment made or to be made by the Debtor or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with the Bankruptcy Case, or in connection with the Plan and incident to the Bankruptcy Case, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable.

5.    The Debtor has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a joint plan, or a successor to the Debtor under the Plan, and the appointment to, or continuance in, such office of such individual, is consistent with the interests of Creditors and with public policy, and the Debtor has disclosed the identity of any insider that will be employed or retained by the Debtor, and the nature of any compensation of such insider.

6.    Any governmental regulatory commission with jurisdiction, after confirmation of the Plan, over the rates of the Debtor has approved any rate change provided for in the Plan, or such rate change is expressly conditioned on such approval.  *The Debtor does not believe this requirement is applicable to the Bankruptcy Case.*

7.    With respect to each Impaired Class: (a) each holder in such Class has accepted the Plan or will receive or retain under the Plan on account of such Claim property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date; or (b) if section 1111(b)(2) of the Bankruptcy Code applies to the Claims of such Class, each holder in such Class will receive or retain under the Plan on account of such Claim property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's

interest in the Estate's interests in the property that secures such Claims. *This means that, if a Creditor who is entitled to vote rejects the Plan, the Plan must provide the Creditor with at least what it would receive in a hypothetical chapter 7 liquidation of the Debtor.*

8.      With respect to each Class: (a) such Class has accepted the Plan; or (b) such Class is not Impaired under the Plan. *If an Impaired Class has rejected the Plan, then the Plan may still be confirmed on Cramdown with respect to that Class, as discussed below.*

9.      Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides: (a) that with respect to a Claim of a kind specified in section 507(a)(1) or 507(a)(2) of the Bankruptcy Code, on the Effective Date of the Plan, the holder of such Claim will receive on account of such Claim cash equal to the Allowed amount of such Claim; (b) that with respect to a Class of Claims of a kind specified in section 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of the Bankruptcy Code, each holder of a Claim of such Class will receive (i) if such Class has accepted the Plan, deferred cash payment of a value, as of the Effective Date of the Plan, equal to the Allowed amount of such Claim, or (ii) if such Class has not accepted the Plan, cash on the Effective Date of the Plan equal to the Allowed amount of such Claim; and (c) with respect to a Claim of a kind specified in section 507(a)(8) of the Bankruptcy Code, the holder of such Claim will receive on account of such Claim deferred cash payments, over a period not exceeding five years after the order for relief, of a value, as of the Effective Date of the Plan, equal to the Allowed amount of such Claim.

10.     If a Class of Claims is Impaired under the Plan, at least one Class of Claims that is Impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider.

11.     Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

12.     All fees payable under Section 1930 of Title 28 (United States Code), as determined by the Bankruptcy Court, have been paid or the Plan provides for the payment of all such fees on the Effective Date of the Plan.

13.     The Plan provides for the continuation after its Effective Date of payment of all retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114, at any time prior to confirmation of the Plan, for the duration of the period the Debtor has obligated themselves to provide such benefits. *The Debtor do not believe this requirement is applicable to the Bankruptcy Case.*

There are various other provisions governing the confirmation of the Plan, including as applicable to individual Debtor, some of which do not apply (such as domestic support

33

obligations).  The foregoing is a summary only of the main confirmation requirements and is not intended to replace such confirmation requirements as are otherwise applicable or such confirmation requirements as may apply to any given Creditor.

E.      *Cramdown*

        The Bankruptcy Court may confirm the Plan at the request of Debtor if: (a) all of the requirements of section 1129(a) of the Bankruptcy Code are met, with the exception of section 1129(a)(8); (b) at least one Class of Claims that is Impaired under the Plan has accepted the Plan (excluding the votes of Insiders), if a Class of Claims is Impaired; and (c) as to each Impaired Class that has not accepted the Plan, the Plan does not "discriminate unfairly" and is "fair and equitable."  This is referred to as "cramdown."

        A chapter 11 plan does not "discriminate unfairly" within the meaning of the Bankruptcy Code if the classification of Claims under a plan complies with the Bankruptcy Code and no particular class will receive more than it is legally entitled to receive for its Claims.  The Debtor believe that the classifications established under the Plan are proper and that no Class under the Plan is receiving more than it is legally entitled to receive.  "Fair and equitable," on the other hand, has different meanings for Secured and Unsecured Claims.

        With respect to a Class of Secured Claims that rejects the Plan, to be "fair and equitable" the Plan must, among other things, either: (a) provide that the holders of such Secured Claims retain their liens securing such Claims, whether the property subject to such liens is retained by the Debtor or transferred to another entity, to the extent of the Allowed amount of such Claims, and that each holder of a Secured Claim in such Class receive on account of such Claim deferred cash payments totaling at least the Allowed amount of such Claim, of a value, as of the Effective Date of the Plan, of at least the value of such holder's interest in the Estate's interest in such property; or (b) provide for the sale, subject to section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing such Secured Claims, free and clear of such liens, with such liens attaching to the proceeds of such sale, and the treatment of such liens on such proceeds in accordance with the Bankruptcy Code; or (c) provide for the realization by the holders of such Secured Claims of the indubitable equivalent of such Claims.  The Debtor believes that the Plan is fair and equitable to each Class of Secured Claims under the Plan.

        With respect to a Class of Unsecured Claims that rejects the Plan, to be "fair and equitable" the Plan must, among other things, either: (a) provide that each holder of an Unsecured Claim in such Class receive or retain on account of such Claim property of a value, as of the Effective Date of the Plan, equal to the Allowed amount of such Claim; or (b) not allow the holder of any Claim that is junior to the Unsecured Claims of such Class to receive or retain any property under the Plan on account of such junior Claim; *i.e.* not permit any holder of any Interest in the Debtor to retain anything under the Plan on account of such interest.  This is called the Absolute Priority Rule and protects Unsecured creditors by ensuring that equity owners do not retain their Interests without payment in full to Unsecured creditors.  Here, the Debtor believes that the Plan satisfies this requirement because the Plan proposes to pay all Unsecured Claims in full, over time.

        With respect to a Class of Interests that rejects the Plan, to be "fair and equitable" the Plan must, among other things, either provide that: (a) each holder of an Interest of such class receive

34

or retain on account of such Interest property of a value, as of the Effective Date of the Plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or (b) the holder of any Interest that is junior to the Interests of such class will not receive or retain under the plan on account of such junior interest any property.

In the event that at least one Class of Claims or Interests is Impaired under the Plan, and if at least one Impaired Class of Claims under the Plan accepts the Plan and one or more Classes of Impaired Claims or Interests rejects the Plan, then the Trustee will seek confirmation of the Plan under the cramdown provisions of section 1129(b) of the Bankruptcy Code. In such event, the Bankruptcy Court will determine, at the confirmation hearing, whether the Plan is fair and equitable and whether it does or does not discriminate unfairly against any rejecting Impaired Class of Claims or Interests. Thus, the confirmation of the Plan may to proceed on Cramdown, meaning that, in addition to satisfying all applicable elements of section 1129(a) of the Bankruptcy Code, the Plan will also have to satisfy all applicable elements of section 1129(b) of the Bankruptcy Code.

F.      *Effective Date of the Plan*

The Plan will become effective upon the occurrence of the Effective Date, subject to the conditions to the effectiveness of the Plan set forth herein. Pursuant to the provisions of the Plan, the Debtor will transmit notice of the effectiveness of the Plan if the Bankruptcy Court confirms the Plan and all conditions precedent to the Plan's effectiveness are satisfied. Said notice will additionally specify various other Plan deadlines that are triggered by the Effective Date of the Plan.

# ARTICLE XVI.
# RISK FACTORS FOR THE PLAN AND DISCLAIMERS

A.      *General*

There are risks associated with the Plan common to all chapter 11 plans. From the perspective of creditors, however, the Debtor believes the Plan provides more certainty than any alternative. The Debtor therefore recommends and requests that creditors vote to confirm the Plan.

B.      *Parties in Interest May Object to the Classification of Claims and Interests*

Section 1122 of the Bankruptcy Code provides that a plan may place a Claim or an Interest in a particular class only if such Claim or Interest is substantially similar to the other Claims or Interests in such class. The Trustee believes that the classification of Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Trustee created certain Classes of Claims and Interests, each encompassing Claims or Interests, as applicable, that are substantially similar to the other Claims and Interests in each such Class. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

C.    *Failure to Satisfy Vote Requirement*

If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Trustee intends to seek, as promptly as practicable thereafter, confirmation of the Plan. In the event that sufficient votes are not received, the Trustee may seek to accomplish an alternative chapter 11 plan or may be forced to liquidate under chapter 7 of the Bankruptcy Code. There can be no assurance that the terms of any such alternative would be similar or as favorable to the holders of Allowed Claims as those proposed in the Plan.

D.    *The Trustee May Not Be Able to Secure Confirmation of the Plan or Confirmation May Be Delayed*

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan, and requires, among other things, a finding by the bankruptcy court that: (a) such plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; (b) confirmation of such plan is not likely to be followed by a liquidation or a need for further financial reorganization unless such liquidation or reorganization is contemplated by the plan; and (c) the value of distributions to non-accepting holders of Claims and Interests within a particular class under such plan will not be less than the value of distributions such holders would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

There can be no assurance that the requisite acceptances to confirm the Plan will be received. Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan. A non-accepting holder of an Allowed Claim might challenge either the adequacy of the Disclosure Statement or whether the solicitation procedures and voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules. Even if the Bankruptcy Court determined that the Disclosure Statement, the solicitation procedures, and voting results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it found that any of the statutory requirements for confirmation had not been met, including the requirement that the terms of the Plan do not "unfairly discriminate" and are "fair and equitable" to non-accepting Classes.

The confirmation and consummation of the Plan are also subject to certain other conditions. No assurance can be given that these conditions will be satisfied.

If the Plan is not confirmed in a timely manner, it is unclear whether the transactions contemplated thereby could be implemented and what holders of Claims and Interests would ultimately receive in respect of their Claims and Interests. It is possible that any alternative could provide holders of Claims with less than they would have received pursuant to the Plan. Moreover, an inability to confirm the Plan could result in an extended chapter 11 proceeding.

The Trustee, subject to the terms and conditions of the Plan, reserves the right to modify the terms and conditions of the Plan as necessary for confirmation.

E.    *Nonconsensual confirmation — "Cramdown"*

In the event that any Impaired class of Claims or Interests does not accept a chapter 11 plan, a bankruptcy court may nevertheless confirm such a plan at the Trustee's request if at least

36

one Impaired class has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class), and, as to each Impaired class that has not accepted the plan, the bankruptcy court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting Impaired classes.

Although the Trustee believes that the Plan will meet such tests, the Trustee cannot be certain that the Bankruptcy Court would reach the same conclusion. If the Bankruptcy Court does not confirm the Plan, the Trustee may pursue one of the following alternatives: (a) confirmation of an alternative plan under chapter 11 of the Bankruptcy Code, (b) dismissal of the Bankruptcy Case, or (c) liquidation of the Debtor under chapter 7 of the Bankruptcy Code.

F.    *The Trustee May Object to the Amount or Classification of a Claim*

Except as otherwise provided in the Plan, the Trustee reserves the right to object to the amount or classification of any Claim or Interest under the Plan. Any estimates set forth in this Disclosure Statement cannot be relied on by any holder of a Claim or Interest where such Claim or Interest is subject to an objection. Any holder of a Claim or Interest that is subject to an objection thus may not receive its expected share of the estimated distributions described in this Disclosure Statement.

G.    *Risk of Nonoccurrence of the Effective Date*

Although the Trustee believes that the Effective Date may occur quickly after the Confirmation Date, there can be no assurance as to such timing, or as to whether the Effective Date will, in fact, occur at all.

H.    *Risk Affecting Potential Recoveries of Holders of Claims in Voting Classes*

The Trustee cannot state with certainty what recovery will be available to holders of Claims in voting classes (if any). The Trustee cannot know with certainty, at this time, how much money will remain after paying all Allowed Claims which are senior to the Claims of junior holders. The Trustee also cannot know with certainty, at this time, the number or size of Claims in classes senior to the other classes, or Claims that are unclassified, which will ultimately be Allowed.

I.    *Risks Associated with Forward Looking Statements*

**The financial information contained in this Disclosure Statement has not been audited.** In preparing this Plan and Disclosure Statement, the Trustee relied on financial data derived from the Debtor's books and records that was available at the time of such preparation. Although the Trustee used his reasonable business judgment to ensure the accuracy of the financial information provided in this Plan and Disclosure Statement, and while the Trustee believes that such financial information fairly reflects the financial condition of the Debtor, the Trustee is unable to warrant or represent that the financial information contained herein and attached hereto is without inaccuracies.

4921-4670-7839v.3

J.    *Disclosure Statement Disclaimer*

1.    <u>Information Contained Herein Is for Soliciting Votes</u>

The information contained in this Plan and Disclosure Statement is for purposes of soliciting acceptances of the Plan and may not be relied upon for any other purposes.

2.    <u>This Plan and Disclosure Statement Was Not Reviewed or Approved by the Securities and Exchange Commission</u>

This Plan and Disclosure Statement was not filed with the SEC under the Securities Act or applicable state securities laws. Neither the SEC nor any state regulatory authority has passed upon the accuracy or adequacy of this Disclosure Statement, or the exhibits or the statements contained herein, and any representation to the contrary is unlawful.

3.    <u>This Plan and Disclosure Statement May Contain Forward Looking Statements</u>

This Plan and Disclosure Statement may contain "forward looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. Such statements consist of any statement other than a recitation of historical fact and can be identified by the use of forward looking terminology such as "may," "expect," "anticipate," "estimate," or "continue" or the negative thereof or other variations thereon or comparable terminology. The reader is cautioned that all forward looking statements are necessarily speculative and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward looking statements.

The liquidation analysis, distribution projections, or other information contained herein and attached hereto are estimates only, and the timing and amount of actual distributions to holders of Allowed Claims may be affected by many factors that cannot be predicted. Therefore, any analyses, estimates, or recovery projections may or may not turn out to be accurate.

4.    <u>No Legal or Tax Advice Is Provided to You by this Plan and Disclosure Statement</u>

This Plan and Disclosure Statement is not legal advice to you. The contents of this Plan and Disclosure Statement should not be construed as legal, business, or tax advice. Each holder of a Claim or an Interest should consult his or her own legal counsel and accountant with regard to any legal, tax, and other matters concerning his or her Claim or Interest. This Plan and Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to confirmation of the Plan.

5.    <u>No Admissions Made</u>

The information and statements contained in this Plan and Disclosure Statement will neither (a) constitute an admission of any fact or liability by any Entity (including, without limitation, the Trustee, the Debtor, or the Reorganized Debtor) nor (b) be deemed evidence of the tax or other legal effects of the Plan on the Debtor, the Reorganized Debtor, holders of Allowed Claims or Interests, or any other parties in interest.

38

6.      <u>Failure to Identify Litigation Claims or Projected Objections</u>

No reliance should be placed on the fact that a particular litigation Claim, Cause of Action, or projected objection to Claim or Interest is, or is not, identified in this Plan and Disclosure Statement. The Trustee, Debtor, or Reorganized Debtor, as applicable, may seek to investigate, file, and prosecute litigation Claims, Causes of Action, and projected objections to Claims after the confirmation or Effective Date irrespective of whether this Plan and Disclosure Statement identifies any such Causes of Action, Claims, or objections to Claims.

7.      <u>No Waiver of Right to Object or Right to Recover Transfers and Assets</u>

The vote by a holder of an Allowed Claim for or against the Plan does not constitute a waiver or release of any Claims or rights of the Debtor or Reorganized Debtor (or any party in interest, as the case may be) to object to that holder's Allowed Claim.

8.      <u>Information Was Provided by the Debtor and Was Relied Upon by the Debtor's Advisors</u>

Counsel to and other advisors retained by the Trustee have relied upon information provided by the Debtor in connection with the preparation of this Disclosure Statement. Although counsel to and other advisors retained by the Trustee have performed certain limited due diligence in connection with the preparation of this Disclosure Statement, they have not verified independently the information contained herein.

9.      <u>Potential Exists for Inaccuracies, and the Debtor has No Duty to Update</u>

The statements contained in this Plan and Disclosure Statement are made by the Trustee as of the date hereof, unless otherwise specified herein, and the delivery of this Plan and Disclosure Statement after that date does not imply that there has not been a change in the information set forth herein since that date. While the Trustee used his reasonable business judgment to ensure the accuracy of all the information provided in this Plan and Disclosure Statement, the Trustee nonetheless cannot, and does not, confirm the current accuracy of all statements appearing in this Plan and Disclosure Statement. Further, although the Trustee may subsequently update the information in this Plan and Disclosure Statement, the Trustee has no affirmative duty to do so unless ordered to do so by the Bankruptcy Court.

10.      <u>No Representations Outside the Plan and Disclosure Statement are Authorized</u>

No representations concerning or relating to the Debtor, the Bankruptcy Case, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Plan and Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan other than as contained in, or included with, this Plan and Disclosure Statement, should not be relied upon by you in arriving at your decision.

4921-4670-7839v.3

## ARTICLE XVII.
## ALTERNATIVES TO CONFIRMATION OF THE PLAN

The Trustee believes that the Plan affords the holders of Claims and Interests the potential for a better realization on the Debtor's assets than a chapter 7 liquidation, and therefore, is in the best interests of such holders. If, however, the Plan is not confirmed, the theoretical alternatives include (a) formulation of an alternative plan or plans of reorganization or liquidation under chapter 11 or (b) liquidation of the Debtor under chapter 7 of the Bankruptcy Code. Each of these possibilities is discussed below.

A.    *Alternative Plans of Reorganization or Liquidation*

If the requisite acceptances are not received or if the Plan is not confirmed, the Trustee could attempt to formulate and propose a different plan or plans of reorganization or liquidation.

With respect to an alternative liquidation plan, the Trustee explored alternatives in connection with the formulation and development of the Plan. The Trustee believes that the Plan enables creditors to realize the greatest possible value under the circumstances because it maximizes the consideration available to distribute to creditors, and that, as compared to any plan of liquidation, has the greatest chance to be confirmed and consummated.

B.    *Liquidation under Chapter 7*

The Plan does not Impair any Class of Claims. The Trustee therefore need not demonstrate that each Impaired Class of Claims will receive or retain under the Plan on account of such Claims property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated under chapter 7. *See* 11 U.S.C. § 1129(a)(7)(A)(ii). Furthermore, a traditional liquidation analysis would be impractical to perform in this case, and it would not necessarily provide useful information. As an initial matter, the tax claims filed by Roberts County and Gray County should be disallowed because those were filed in the wrong case, and the Trustee plans to object on that basis. They are claims against the Debtor's subsidiary, MVR, not against the Debtor. That result would be the same under the Plan as in a case under chapter 7. The Claim filed by the IRS will be paid in full under the Plan to the extent Allowed, whereas payment would be less certain in a hypothetical chapter 7 case (because Administrative Claims take priority). The Claim filed by the Comptroller will be paid in the companion chapter 11 case filed by MVR, so it will not be paid in this case, nor would it be paid in a hypothetical chapter 7 case. The remaining Claims were all filed by parties to the Adversary Proceeding and are subject to the outcome thereof, and the Trustee is not in a position to provide a meaningful estimate of those liabilities. Suffice it to say that, whatever those liabilities are, the Trustee believes that the Reorganized Debtor, as a going-concern with positive cash flow, will be better positions to satisfy those liabilities than a chapter 7 trustee in a hypothetical liquidation.

The Plan does, on the other hand, Impair the only Class of Interests. Assuming that Class of Interests rejects the Plan, then the Trustee must prove that members of the Class will receive or retain under the Plan on account of such Interests property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holders would so receive or retain if the Debtor were liquidated under chapter 7. Both under the Plan and in a hypothetical chapter 7 case, holders

40

4921-4670-7839v.3

of Allowed Interests in the Debtor will retain those Interests, as determined in the Adversary Proceeding. The difference is the effect that liquidating the Debtor in chapter 7 would have on the value of those Interests as compared to their value if the Debtor continues as a going concern under the Plan. Like with the prospects for satisfying Claims in a hypothetical chapter 7 case, the Trustee believes that the Allowed Interests will ultimately have greater value if the Debtor continues in business under the Plan than they would have if the Debtor ceased operations and liquidated its assets.

The Trustee therefore submits that the Plan offers a better return than a chapter 7 liquidation to all Creditors and Interest holders.

C.      *Dismissal of the Bankruptcy Cases*

If the Plan is not confirmed, the Trustee or other parties in interest may seek dismissal of the Bankruptcy Cases pursuant to section 1112 of the Bankruptcy Code. Without limitation, dismissal of the Bankruptcy Case would terminate the automatic stay and would likely lead to an uncoordinated scramble the creditors to satisfy their claims from the Debtor's assets, known as a "race to the courthouse."

Accordingly, the Debtor believes that dismissal of the Bankruptcy Cases would reduce the value of the Debtor's Estate.

### ARTICLE XVIII.
### TAX CONSEQUENCES OF THE PLAN

**THE PLAN AND ITS RELATED TAX CONSEQUENCES ARE COMPLEX. THERE ALSO MAY BE STATE, LOCAL OR OTHER TAX CONSIDERATIONS APPLICABLE TO EACH CREDITOR. CREDITORS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE, LOCAL, AND OTHER TAX LAWS. NOTHING IN THIS DISCLOSURE STATEMENT OR IN THE PLAN IS MEANT TO PROVIDE ANY TAX ADVICE TO ANY CREDITOR OR PARTY IN INTEREST.**

### ARTICLE XIX.
### CONCLUSION, RECOMMENDATION,
### AND REQUEST FOR CONFIRMATION

The Trustee believes that confirmation of the Plan is desirable and in the best interests of all holders of Claims and Interests. The Trustee urges you to vote to accept the Plan and to evidence such acceptance by returning your ballot so it will be received by the voting deadline.

The Trustee requests confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code.

4921-4670-7839v.3

RESPECTFULLY SUBMITTED the 2nd day of February, 2026

By: /s/ *Julian P. Vasek*

Thomas D. Berghman
Texas Bar No. 24082683
Julian P. Vasek
Texas Bar No. 24070790
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 4000
Dallas, Texas 75201-6605
Telephone:          (214) 855-7500
Email: tberghman@munsch.com
          jvasek@munsch.com

**Counsel to the Chapter 11 Trustee**

42